UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-557(DSD/JJK)

Quinn Nystrom,

       Plaintiff,

v.                                          **ORDER**

AmerisourceBergen Drug Corporation,
AmerisourceBergen Group Health and
Welfare Plan (Plan No. 625) and Aetna
Life Insurance Company,

       Defendants.

    Mark A. Smith, Esq., Elizabeth I. Wrobel, Esq. and Wrobel
    & Smith, PLLP, 1599 Selby Avenue, Suite 105, St. Paul, MN
    55105, counsel for plaintiff.

    Patrick H. O'Neill, Jr., Esq. and Larson King, LLP, 30
    East Seventh Street, Suite 2800, St. Paul, MN 55101 and
    Edna S. Kersting, Esq. and Wilson, Elser, Moskowitz,
    Edelman & Dicker, LLP, 55 West Monroe Street, Suite 3800,
    Chicago, IL 60603, counsel for defendants.

This matter is before the court upon the cross-motions for summary judgment by plaintiff Quinn Nystrom and by defendants AmerisourceBergen Drug Corporation (AmerisourceBergen), AmerisourceBergen Group Health and Welfare Plan (Plan No. 625) and Aetna Life Insurance Company (Aetna). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion by defendants.

**BACKGROUND**

This insurance benefit dispute arises out of medical care received by Nystrom. Nystrom had health insurance through an insurance plan (Plan) provided by her former employer, AmerisourceBergen. AmerisourceBergen was the statutory administrator of the Plan. Admin. R. 86. Aetna was a third-party service provider and claims administrator for the Plan. Compl. ¶ 8.

Nystrom has been diagnosed with bulimia nervosa, post-traumatic stress disorder (PTSD), major depression, alcohol abuse and Type I diabetes. Admin. R. 137, 139, 292, 303. Throughout such diagnoses, Nystrom was treated in outpatient, inpatient and hospital settings. Id. at 139, 177, 179. In May 2012, Nystrom was admitted for inpatient eating disorder treatment at Methodist Hospital in Minnesota. Id. at 137-143. Nystrom remained hospitalized for one week. Id. at 141. Thereafter, Nystrom began intensive day programming at Melrose Institute while she was on a waiting list for Timberline Knolls Residential Treatment Center (Timberline Knolls), an eating disorder treatment center in Lemont, Illinois. Id. at 138.

On June 19, 2012, Nystrom was admitted to Timberline Knolls. Compl. ¶ 22; Admin. R. 185. On June 22, 2012, Timberline Knolls sought retroactive pre-certification from Aetna for residential treatment for Nystrom. Admin. R. 185-86. Aetna denied coverage,

finding that "[t]reatment of [Nystrom] could be provided at a lower level of care, or in another setting, e.g., partial hospitalization, intensive outpatient, or routine outpatient" treatment.  Id. at 181.  The denial letter informed Nystrom that she could appeal the decision, and that she should include "comments, documents, records and other additional information you would like to have considered."  Id. at 152.

Nystrom requested an expedited appeal.  On June 26, 2012, Nystrom's treating psychiatrist, Dr. Lauren Kofod, participated in a telephonic appeal of the decision.  Compl. ¶ 35.  Two psychiatrists reviewed the claim and again denied coverage, finding Nystrom "does not ... meet criteria for a residential level of care but does meet [criteria] for partial hospitalization treatment."  Admin. R. 179.  Nystrom again appealed the denial.  Another psychiatrist reviewed the request for reconsideration and again denied coverage, finding that "[t]he need for the residential level of care has not been well presented .... Based on the information currently available, the patient appears to be able to be safely and effectively treated in a partial hospitalization level of care."  Id. at 177.

On July 5, 2012, Nystrom requested an external review, and on July 10, 2012, the external reviewer upheld Aetna's denial of benefits.  The external reviewer found that "[t]here is no evidence in the record that [Nystrom] requires residential level of care at

3

this time." Id. at 129. On August 17, 2012, Nystrom was discharged into the partial hospitalization program at Timberline Knolls.

On March 11, 2013, Nystrom filed suit, alleging a claim under the Employee Retirement Income Security Act (ERISA). Nystrom and defendants both move for summary judgment.[1]

## DISCUSSION

**I. Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

---

[1] Under the court's standing order regarding dispositive motion practice, defendants' reply brief was untimely. Nystrom moved to strike the reply brief, and defendants then moved for leave to file their untimely brief. See ECF No. 91. Because the reply brief was filed more than a week before the hearing - and because a litigant has no opportunity to respond to a timely-filed reply brief - the court perceives no prejudice from allowing defendants to file the untimely reply brief. As a result, the motion to strike the reply brief is denied and the motion for leave to file the untimely brief is granted.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Celotex, 477 U.S. at 322-23.

**II. Denial of Benefits**

    **A.    Standard of Review**

As a threshold matter, the parties disagree which standard of review applies to the instant dispute. Under ERISA, a plan participant may bring a civil action to "recover benefits due to [her] under the terms of her plan." 29 U.S.C. § 1132(a)(1)(B). Nystrom argues that the court should review the denial of benefits de novo. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the

plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Defendants respond that the Plan gave Aetna discretion to construe the terms of the Plan, and that, as a result, its decision should be reviewed under the abuse of discretion standard. See Ortlieb v. United HealthCare Choice Plans, 387 F.3d 778, 781 (8th Cir. 2004) ("When a plan gives discretion to the plan administrator, then a plan administrator's decision is reviewed judicially for an abuse of discretion." (citation omitted)). The court agrees.

In order to trigger the abuse-of-discretion review, the policy must contain "explicit discretion-granting language." Hankins v. Standard Ins. Co., 677 F.3d 830, 835 (8th Cir. 2012) (citation and internal quotation marks omitted). Here, the Plan provides that Aetna "shall ... act as fiduciary solely for health benefit determination and final review of denied claims for health benefits under the Plan." Admin. R. 103. Further, the Administrative Services Agreement between Aetna and AmerisourceBergen provides that AmerisourceBergen "hereby delegates to Aetna ... authority to make determinations on behalf of [AmerisourceBergen] with respect to benefit payments under the Plan and to pay such benefits." Id. at 97.

The court finds that such language explicitly delegates eligibility determinations to Aetna, despite not using the term "discretion." See Hankins, 677 F.3d at 835 (noting that

discretion-granting language need not use the term "discretion") Indeed, the documents expressly "delegate[] to Aetna ... authority to make determinations ... with respect to benefit payments." Admin. R. 97. Such language, although not a model of clarity, tracks the Eighth Circuit's standard for the abuse-of-discretion standard. See King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 998-99 (8th Cir. 2005) ("Where a plan gives the administrator discretionary power to construe uncertain terms *or to make eligibility determinations*, however, ... the administrator's decision is reviewed only for abuse ... of his discretion." (second alteration in original) (emphasis added) (citations and internal quotation marks omitted)). As a result, the abuse of discretion standard applies to the court's review of the denial of benefits.

**B.   Substantive Review**

Nystrom argues that, even under the abuse-of-discretion standard, Aetna abused its discretion in denying benefits. Under that standard, the court will uphold Aetna's benefits decision if it was supported by substantial evidence. See McGee v. Reliance Standard Life Ins. Co., 360 F.3d 921, 924 (8th Cir. 2004). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (citation and internal quotation marks omitted). The court will not disturb a decision supported by substantial evidence even if a different, reasonable decision could have been made. See id.

"When reviewing a denial of benefits by an administrator who has discretion under an ERISA-regulated plan, a reviewing court must focus on the evidence available to the plan administrators at the time of their decision[2] and may not admit new evidence or consider post hoc rationales." King, 414 F.3d at 999 (citation and internal quotation marks omitted).

Here, in order to be covered under the Plan, treatment must be "medically necessary." Admin. R. 18. The Plan defines "medically necessary" care as health care provided by a physician:

> exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, [if] that provision of the service ... is a) [i]n accordance with generally accepted standards of medical or dental practice; b) [c]linically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease; and c) [n]ot primarily for the convenience of the patient, physician or other health care provider; d) [a]nd not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury, or disease.

---

[2] Defendants moved to strike Nystrom's affidavit submitted in support of her motion for summary judgment. Because the court must focus on the evidence available to Aetna at the time it made its decision, consideration of that affidavit is not appropriate.

Admin. R. 18.  The Plan also states that "[n]ot every medical service ... is covered by the [P]lan, even if prescribed, recommended, or approved by your physician." Id. at 41.

At each level of review, Aetna found that residential treatment was not medically necessary.  Such decisions were supported by substantial evidence in the record.  For example, the denial of the first appeal noted that:

> with the last partial hospitalization program immediately prior to this residential stay, [Nystrom] had been able to stop the restricting, bingeing and purging and [her] blood sugars were stable. Currently, [Nystrom is] medically stable with no blood sugar issues since admission, able to function on a daily basis, and cooperative with the treatment process. [Nystrom] denied suicidal or homicidal thoughts and psychosis, mania, hypomania or severe depression. Based on the information currently available, [Nystrom] appear[s] to be able to be safely and effectively treated in a partial hospitalization level of care with a dual diagnosis capability, to manage [her] eating disorder with any trauma issues and help for coping with any nighttime stress that may occur without using alcohol.

Admin. R. 149. Additionally, the second appeal further considered Nystrom's additional diagnoses, noting that "[t]here is no indication that [Nystrom] had had intensive treatment for [her] abuse issues or that it has not been effective at a level of care outside of a twenty-four hour setting." Id. at 146. Given such a rationale - which is supported by the record and connected to the elements of "medical necessity" - a reasonable person could accept

9

such evidence as adequate to support Aetna's conclusion that residential care was not medically necessary. See Midgett v. Wash. Group Int'l Long Term Disability Plan, 561 F.3d 887, 897 (8th Cir. 2009) ("Provided the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." (citations and internal quotation marks omitted)).

Nystrom argues, nevertheless, that Aetna failed to adequately investigate her claim and request additional records. Specifically, Nystrom argues that Aetna abused its discretion by "deny[ing] the claim without explanation and without obtaining relevant information." Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1464 (9th Cir. 1997) (citations omitted). Aetna, however, obtained all necessary information required to make its benefit determination, even engaging in telephonic communication with Nystrom's treating physicians to ascertain her claim and her symptoms. See Admin. R. 179. Moreover, as already explained, Aetna informed Nystrom of the reasons for its denial. Further, Aetna offered Nystrom the opportunity to submit additional materials. Id. at 152. As a result, the argument that Aetna abused its discretion by failing to acquire necessary information is unavailing.

Nystrom next argues that Aetna ignored the psychiatric opinions of her treating physicians, who opined that residential

10

treatment was medically necessary. Opinions of treating physicians, however, are not automatically entitled to greater weight than reviewing physicians. Cf. Midgett, 561 F.3d at 897 ("The Supreme Court has recognized that treating physicians are not automatically entitled to special weight in disability determinations under ERISA."). Rather, a "plan administrator has discretion to deny benefits based upon its acceptance of the opinions of reviewing physicians over the conflicting opinions of the claimant's treating physician unless the record does not support the denial." Id. (citation and internal quotation marks omitted). As already explained, substantial evidence in the record supported the denial of benefits, and as a result, Aetna did not abuse its discretion by crediting the opinions of its reviewing doctors.[3]

Finally, Nystrom argues that Aetna abused its discretion by improperly relying on its Level of Care Assessment Tool (LOCAT). "A plan administrator can rely on internal rules or policies," however, "if th[o]se rules or policies reasonably interpret the plan." Smith v. Health Servs. Of Coshocton, 314 F. App'x 848, 859 (6th Cir. 2009) (citations omitted). Here, although Aetna's

---

[3] Nystrom also argues that the reviewing doctors were not qualified to determine whether residential treatment was medically necessary because they did not specialize in eating disorders. Each physician, however, was a board-certified psychiatrist, and the court finds that such perceived lack of qualifications does not amount to an abuse of discretion.

11

reviewers used LOCAT when analyzing Nystrom's claim, they did not do so exclusively.  Indeed, as already explained, the record is replete with the reviewers' rationale for their denials, only a small portion of which relates to LOCAT.  <u>See, e.g.</u>, Admin. R. 177, 179.  As a result, Nystrom's argument that Aetna improperly relied on the LOCAT metric is without merit.  Therefore, the court concludes that Aetna did not abuse its discretion when it denied Nystrom's claim for benefits, and summary judgment for defendants is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.   The motion for summary judgment by plaintiff [ECF No. 71] is denied;

2.   The motion for summary judgment be defendants [ECF No. 73] is granted;

3.   The motion to strike pleading [ECF No. 80] is granted;

4.   The motion to strike pleading [ECF No. 91] is denied; and

5.   The motion for leave to file reply [ECF No. 92] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  September 2, 2014

<u>s/David S. Doty</u>
David S. Doty, Judge
United States District Court